UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                :

ILLINOIS COMPUTER RESEARCH LLC,   :
                                :

                     Plaintiff, :    10 Civ. 9124 (KBF)
                                :

         -v-              :    <u>MEMORANDUM OPINION &</u>
                                :      <u>ORDER</u>

HARPERCOLLINS PUBLISHERS, INC., et :
al.,                            :
                                :

                   Defendants.:
------------------------------------X

KATHERINE B. FORREST, District Judge:

    On August 10, 2010, Plaintiff Illinois Computer Research,

LLC, the owner of United States Patent No. 7,111,252 (the "'252

patent"), brought an infringement action against three

publishers: HarperCollins Publishers, Inc., HarperCollins

Publishers, L.L.C. (together "HarperCollins"), Random House,

Inc., and Simon & Schuster, Inc.  Defendants counterclaimed for

declarations of invalidity and non-infringement.

    The inventor of the '252 patent, Scott Harris, an attorney

who previously worked at a law firm that specialized in patent

work, first applied for the patent in 1999.  During the

prosecution of the patent, Mr. Harris communicated on numerous

occasions with the Patent and Trademark Office (the "PTO")

regarding the particular claims of his invention and

differentiated those claims from claims made in prior art.  (<u>See</u>

<u>e.g.,</u> Davis Decl. Exs. N, O and P, Sept. 22, 2011, Dkt No. 94.)

Certain of the claims originally included in the initial patent application were not included in the patent as issued.  As a result, and as is often the case, the claims in the prosecution history have different numerical designations from how those claims are set forth in the patent as ultimately issued.  For instance, what is now claim 1 in the '252 patent was "claim 85" during the period of patent prosecution.  This will be referred to during the discussion below when this Court references the prosecution history of how particular claims are correctly construed.

After a seven year prosecution, the '252 patent was finally issued on September 19, 2006.  The '252 patent is entitled "Enhancing Touch and Feel on the Internet."  The complaint describes the '252 patent as "an apparatus and method for obtaining and reviewing excerpts from a digital book for preview prior to purchase, but prevents the reader from obtaining and reviewing the entire book prior to purchase."  (Compl. ¶ 10.)  Plaintiff claims that defendants' websites infringe the '252 patent.  (Compl. ¶¶ 11, 14 and 17.)  Defendants have counterclaimed for invalidity on the basis of prior art that was not before the patent office during prosecution and for non-infringement.  (Dkt Nos. 86-88.)  The meaning and scope of the claims at issue will have a significant impact on the invalidity and non-infringement claims.

BACKGROUND OF THIS MOTION

It has become a matter of course for patent cases to proceed in the following manner: a plaintiff sets forth the specific claims of the patent(s) it asserts defendant(s) infringe and the manner of such infringement in its complaint and in the form of "infringement contentions", and defendant(s) counterclaim for a finding of non-infringement and, very frequently, invalidity in the form of counterclaims and "invalidity contentions."  Infringement and invalidity are factual questions, Nystrom v. TREX Co., Inc., 339 F.3d 1347, 1350 (Fed. Cir. 2003), but depend on the meaning and scope of the claimed invention.

As a result, a necessary and preliminary step to reaching the merits of the parties' respective contentions is to determine the scope and meaning of the patent claims at issue. The proceeding at which the parties put forth their respective claim constructions is called a "Markman" hearing, after the case that once and for all put to rest the question of whether claim construction is a question for the court or the jury. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976-79 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).  In Markman, the court ruled, and the Supreme Court then affirmed, that claim construction is a question for the court to decide.  Id. at 979.

Frequently, a factual determination as to whether or not infringement has occurred or whether or not prior art may be applicable depends directly on how a claim is construed.  Cybor Corp. v. FAS Techs., Inc, 138 F.3d 1448, 1454 (Fed. Cir. 1998). Questions of infringement and invalidity, if not resolved on summary judgment following claim construction, are left for trial (and often a jury) to decide.

In the matter before this Court, the parties have moved to construe certain claims of the '252 patent.  Plaintiff and defendants have set forth their views on the meaning of the claims at issue.  (Dkt Nos. 89, 93-95, 97-99.)  Prior to the hearing, the parties stated that they would not be calling witnesses live at the hearing.  The Markman hearing in this case occurred on January 3, 2012, and consisted of oral argument from counsel for the parties.

THE CLAIMS TO BE CONSTRUED

Plaintiff's infringement allegations relate to eleven claims (1, 7, 8, 11 and 15-21) of the '252 patent. (Compl. ¶¶ 11, 14 and 17.)  Claims 8 and 19-21 are "dependent" claims.  As a matter of law, infringement of dependent claims requires a finding that the related "independent" claims have been infringed.  Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe

4

an independent claim can not infringe a claim dependent on (and thus containing all the limitations of) that claim.")

The parties have disagreements as to the meaning and scope of some of the language in claims 1, 7, 8, 11 and 18. They submitted a "Revised Joint Claim Construction Chart" (Davis Decl. Ex. A) and made submissions at oral argument that were marked as Court Exhibits 1 and 2 for identification, regarding their views as to the correct meaning of the disputed language. (Dkt Nos. 109-110.) Unsurprisingly, the parties' disputes regarding the meaning and scope of the claims relates directly to their positions as to whether infringement has or has not occurred in the manner claimed.

THIS COURT'S CONSTRUCTION TOOLS

The claims of a patent define the invention to which a patentee has been given a right to exclude. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004). Claim construction begins and sometimes ends with the language of the claim itself. The first and most important tool in the Court's toolbox is the language of the claims themselves. Merrill v. Yeomans, 94 U.S. 568, 570 (1876); Phillips, 415 F.3d at 1312; NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1299 (Fed. Cir. 2005); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed.

Cir. 1996).   The claims measure the invention.   <u>Cont'l Paper Bag Co. v. E. Paper Bag Co.</u>, 210 U.S. 405, 419 (1908).   This Court's job is to elaborate what can sometimes be quite terse language in a claim — but in so doing, it must not change the scope of the claim and thereby alter the scope of the invention with respect to which the patentee has exclusion rights.   <u>Terlep v. Brinkmann Corp.</u>, 418 F.3d 1379, 1382 (Fed. Cir. 2005).   To the extent that the language of a claim is not clear on its face, a court has two types of evidence it can pick out of its toolbox to guide its construction: intrinsic and extrinsic evidence.   <u>Phillips</u>, 415 F.3d at 1317.   Intrinsic evidence is often dispositive and should always be the starting place.   Intrinsic evidence includes the patent's specification as well as the patent's prosecution history before the PTO.   <u>Id.</u>   A patentee's statements before the PTO as to the meaning and scope of a claim follow only the language of the claim and the specification in importance to construction.   <u>Id.</u>

     In the matter before this Court, and with respect to several of the claims at issue, both the specification and the prosecution history provide important evidence regarding what the inventor was claiming and how far he intended the scope of his invention to reach.

     If this Court did not find that intrinsic evidence provided enough information to construe the language of the claims at

issue, it could turn to extrinsic evidence.  Phillips, 415 F.3d at 1317.  Extrinsic evidence can include expert and inventor testimony, dictionaries and learned treatises.  Id.; Vitronics, 90 F.3d at 1584.

There is no single key to unlocking the meaning of a particular claim.  A court must use the tools in its toolbox, trying to determine what the inventor meant to cover at the time, what he or she was in fact allowed to cover and what the customary and ordinary meaning of terms were to one skilled in the art at the time the inventor applied for the patent.  See Baran v. Med. Device Techs., Inc., 616 F.3d 1309, 1316 (Fed. Cir. 2010).

CONSTRUCTION OF CLAIM 1

Claim 1 is:

A method comprising:

[a] in a server of a network, storing a plurality of images representing pages of a book,

[b] said images stored with a resolution effective to enable said book to be read;

[c] responsive to a request over the network, sending one of said images to a remote node; and

[d] determining if the request for pages exceeds a certain threshold, and sending said information only if said threshold is not exceeded.

The Meaning of "Image"

The Revised Joint Claim Construction Chart indicates plaintiff's agreement with defendants' proposed construction of [a], [b] and [c].  However, at the Markman hearing and in the submissions of the parties, it is clear that the parties in fact dispute the meaning of the words to which they agreed in the Revised Joint Claim Construction Chart.

The parties "agree" that the first clause of claim 1 should be interpreted as "A method comprising: in a server of a network, storing a plurality of representations of the content of the actual pages of a book."  This seeming agreement masks what is the fundamental point of disagreement — which is the manner in which the invention anticipates that either the "image" or "content" of the book would be presented.

The parties dispute whether "typed in text", for instance in the form of HyperText Markup Language ("HTML"), or a static scanned image such as a Portable Document Format ("PDF") file, are among two of the ways in which such "images" may be presented.  Defendants argue "yes" and plaintiff argues "no." (Compare Defs.' Opening Claim Construction Br. at 23-25 with Pl.'s Responsive Claim Construction Br. at 21-22.)  At oral argument the parties made it clear that whether or not images can include typed in text using HTML may implicate prior art — and therefore may have relevance to invalidity arguments, the

merits of which are left for another day.  (See e.g., Markman

Hr'g Tr. at 13-14, Jan. 4, 2012; see also Markman Hr'g Ct. Exs.

1 at 7-24, 2 at Section II.)

At the Markman hearing, plaintiff argued that the word

"image" should be read narrowly and to mean an image akin to a

true replica of the text as seen in its original book form such

as a photographic version of an image; for instance, a Joint

Photographic Experts Group ("JPEG") file.  (Hr'g Tr. at 20-21.)

The language of the claim is not elucidating on this point.

Plaintiff points to three sections from the specification to

support their reading: column 5 at lines 34-39 and 61-67 and

column 6 at lines 1-6.  (Ct. Ex. 2 at Section IV.)  None of

these references exclude content presented in HTML or PDF

format.  Rather, they use language such as "obtaining a digital

image . . . ." and "digital images" of the book covers, liner

notes and biographic/informational notes, and the table of

content.  The last reference is to a figure that describes "the

front cover of the book showing an accurate depiction of the

look of the book."

There is nothing in the record of the prosecution history

provided by the parties that is helpful one way or the other

regarding whether to construe claim 1 as limited to what are

essentially photographic type images or to expand the meaning to

include typed in text via, for instance, HTML.  However, this

Court is not the first court to be asked to construe this language of this claim. In a recent, prior litigation between plaintiff and Harpo Productions, Inc., Judge Kennelly in the Northern District of Illinois was asked to, and did, construe this very same language. <u>Illinois Computer Research, LLC v. Harpo Prods., Inc.</u>, 704 F.Supp.2d 758 (N.D. Ill. 2010). In that case, plaintiff Illinois Computer requested that the court specifically find that the language at issue <u>could</u> include text presented in HTML format. In that litigation, plaintiff argued that Harpo infringed because the "typed-text is a representation of the contents of the pages of the actual book" and that "all of the data that is used to create the words and punctuation on the page of the book is displayed on the user's screen." (Pl.'s Mem. in Opp. to Harpo's Mot. for Summ. J. of Non-Infringement at 20 <u>Illinois Computer Research, LLC v. Harpo Prods., Inc.</u>, 704 F.Supp.2d 758 (N.D. Ill. 2010) (Davis Decl. Ex. S).)

In opposing summary judgment, plaintiff directly confronted Harpo's argument that images had to be essentially exact photographs of the content. In arguing against that position as far too narrow, plaintiff stated,

> The plain language of the claims says "images **representing** pages of a book" not "exact representation" or "actual physical pages" (emphasis added). Those words do not appear in the claims. If Mr. Harris wanted the claim to say "exact pages," "actual pages" or even just "pages," he would not have

used the words "images representing" before the word
"pages."

Harpo's proposed construction also takes the word
"representing" completely out of the claim – something
cannot represent a thing and at the same time become
that thing.  Actual text is converted to 1's and 0's
(binary code), then reconstituted to create an image
of the actual text, not the original text itself.

(Id. at 8.)

Plaintiff also argued:

Harpo's argument regarding the traditional method is
that the characters are typed-in and thus are not
images representing pages of a book.  This argument
has no merit, as all of the data that is used to
create the words and punctuation on the page of the
book is displayed on the user's screen.  Thus, the
typed-text is a representation of the contents of the
pages of the actual book.

(Id. at 20 (internal citations omitted).)

In the Harpo case, the inventor submitted a declaration

wherein he stated that "a screen that displays text is

displaying an image of that text."  (Declaration of Scott C.

Harris at 4 Illinois Computer Research, LLC v. Harpo Prods.,

Inc., 704 F.Supp.2d 758 (N.D. Ill. 2010) (Davis Decl. Ex. R).)

In the claim chart in that case, the language of claim 1 was

described by plaintiff in the following way: "the server returns

images of a pages over the network connection – those images of

pages including html code with text and formatting information."

Id. at 11.

In the matter before this Court, plaintiff does agree that "a markup language such as HTML, which is both powerful and flexible, could be used to create an image that represented pages of a book." (Illinois Computer Research, LLC's Objections and Resps. to Defs.' Request for Admiss. at 22-23 (Davis Decl. Ex. V, Nov. 4, 2011, Dkt No. 98).) But plaintiff "denies that text in a markup language generally constitute images representing pages of a book and further denies that any person or entity used text in a markup language to create images representing pages of a book before September 22, 1999." (Id. at 23.)

Plaintiff urges that this Court not find that its prior position before Judge Kennelly is dispositive and that it not result in "judicial estoppel." At oral argument, the Court asked plaintiff why, putting aside the legal doctrine of judicial estoppel, its prior position before the Northern District of Illinois was not at the very least an admission. Plaintiff argued only that different positions are taken because of the circumstances that may arise in the context of a particular litigation.

Claim construction is a question of law. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998). It is the process the Court employs to construe a patent's claims, which define the invention to which the patentee has a right to

exclude others from practicing in the absence of permission.
Innova/Pure Water, Inc., 381 F.3d at 1115-16. It is an exercise
in uncovering once and for all the meaning of the words of the
patent so that the public can be properly placed on notice as to
what inventions are and are not covered. See Pitney Bowes, Inc.
v. Hewlett-Packard Co., 182 F.3d 1298, 1311 (Fed. Cir. 1999)
(discussing the importance of public notice function in claim
construction). Put most bluntly, there is no room in claim
construction for a changing of positions. See e.g., Southwall
Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1578 (Fed. Cir.
1995) ("A patentee may not proffer an interpretation for the
purposes of litigation that would alter the indisputable public
record consisting of the claims, the specification and the
prosecution history, and treat the claims as a 'nose of wax.'")
This Court finds that positions plaintiff took in 2010 regarding
the meaning of the term "image" in Claim 1 are admissions and
are therefore a piece of extrinsic evidence for this Court to
consider as it construes that same language in this proceeding.[1]

---

[1] Although this Court construes plaintiff's prior positions as a series of admissions, the doctrine of "judicial estoppel" would also apply to plaintiff's current construction of the term "image" for the following reasons: plaintiff's construction here is clearly inconsistent with the one it put forth in the Harpo case; plaintiff was successful in opposing defendant Harpo's proposed limitation to the definition of "image" in the Harpo case; and plaintiff would surely derive an unfair advantage if it were allowed to take inconsistent positions because it would permit plaintiff to potentially avoid prior art and dodge summary judgment. See Sandisk Corp v. Memorex Prods., Inc. 415 F.3d 1278, 1290-91 (Fed. Cir. 2005).

This Court finds that there is nothing in the language of claim 1 or the specification to exclude any particular format available in September of 1999 from being included within formats that could constitute "images representing pages of a book."  Accordingly, this Court adopts the parties' agreed construction of the first portion of claim 1 that "images representing pages of a book" means "a plurality of representations of the content of the actual pages of a book." The Court also finds that this "content" can include any format available in 1999, including formats that were "typed-in" as well as those that might be photographic representations.

        The Determining Step

        Prior to the Markman hearing, there appeared to be a significant dispute between the parties regarding the "determining step" of claim 1.  (Defs.' Opening Claim Construction Br. at 12-17; Pl.'s Responsive Claim Construction Br. at 10-13.)  That step states, "determining if the request for pages exceeds a certain threshold, and sending said information only if the threshold is not exceeded."  The debate appeared to focus on whether the phrase "exceeds a certain threshold" meant "exceeds a limit on the number of pages of the book the user may read" as defendants suggest, or should instead be read as "exceeds a limit on the amount of reading that can be done" as the plaintiff urges.  (Revised Joint Claim Construction

Chart at 2.)   The importance of the dispute had to do with an infringement claim that plaintiff conceded at oral argument it has dropped (Hr'g Tr. at 27-28), relating to sending an entire book over the internet after payment.  (Pl.'s Responsive Claim Construction Br. at 13.)   Plaintiff stated that it is no longer arguing that it is seeking to find these defendants liable for infringement by virtue of their sending entire books over the internet.  (Hr'g Tr. at 27-28.)   Plaintiff did state, however, that there might be other litigations in which this claim still had relevance.  (Id. at 56.)

In construing the determining step, this Court is concerned here, as it was above, with what the invention is that claim 1 should be construed to cover — thereby placing the public on adequate notice of the bounds of plaintiff's exclusive patent rights.  There will only be one correct construction, not a changing landscape.

It is clear from the language of the claim itself, from the text of the specification, and from various statements made during the prosecution history of the '252 patent, that the invention claimed related to a way to enhance the touch and feel of portions — but not all — of a book using the internet.  There is no support in the claim or in the specification for a reading of the determining step of claim 1 as expansive enough to capture the sale or transfer of an entire book over the

internet.  The prosecution history relating to claim 1 directly contradicts such a reading.

For instance, the determining step of claim 1 is written both with a specific references to just "pages" (and not books), and with a negative limitation on threshold ("and sending said information only if said threshold is not exceeded"), not an expansive reading that would allow threshold to include a concept of "raising" or "lifting" a threshold as plaintiff suggested in their brief in support of their proposed construction.  (See Pl.'s Responsive Claim Construction Br. at 12.)

In addition, on its face, the specification repeatedly refers to the invention as allowing for previewing a product, or reading of excerpts (which is less than an entire book).  For instance, the specification states: "An embodiment limits the amount of reading that the user can do, to prevent the entire book from simply being read on line", and

> This allows the user to read parts of the book.  A problem would exist, however, if the entire book was freely available.  In that case, any user could download the whole book and read it on their computer at their leisure.  Accordingly, the present system teaches limits on the amount of reading that can be done.  A limit is defined that limits the amount of reading that can be done.

U.S. Patent No. 7,111,252 col.2 l.23-25, col.5 l.40-46 (Davis Decl. Ex. B).

During the prosecution history relating to claim 1 (which was referred to then as "Claim 85"), inventor Harris repeatedly discussed his invention as limiting the number of pages that could be accessed.  For instance, he stated that prior art by Danneels "teaches only conditions that are related to time of day, load on the server, or presence of hardware.  There is no teaching or suggestion that the condition could be a threshold of the number of pages."  (Davis Decl. Ex. N at 3.)  He differentiates Robertson as "Nowhere is there any teaching or suggestion of limiting the pages based on the number of pages that have been requested."  (Id. at 4.)  In the same communication with the PTO, inventor Harris states, "The claimed system enables previewing book pages without giving all the possible book pages.  It prevents a user from reading the entire book over the Internet, such as would be desirable in a bookstore type environment.  This is not taught or suggested by the cited prior art and hence should be allowable thereover."  (Id. at 4.)

In a subsequent communication with the PTO, inventor Harris sought to differentiate his invention from that of Iggulden.  In so doing, he stated, "Iggulden teaches remotely storing a book, and allowing a user to read the contents of the book after they prove to the web site that they have already purchased the book. . . .  Of course, once it is proved that the user owns the book,

there is no need or incentive to determine 'if the request for the pages exceeds a certain threshold and sending said information on only if said threshold is not exceeded." (Davis Decl. Ex. O at 9-10 (emphasis in original).) He continues, "Rather, since the requester already owns the book, they should be allowed FULL AND UNLIMITED ACCESS." (Id. (emphasis in original).)

In yet a later communication, inventor Harris attempted to differentiate his invention from that of Schneck and stated, "Schneck teaches nothing about page counts . . . . Nowhere is there any teaching or suggestion of counting a number of pages of books which have been electronically viewed, and allowing an additional page to be displayed only if the page count does not exceed a threshold, as required by claim 85. Therefore, claim 85 should be allowable for these reasons . . . ." (Davis Decl. Ex. O at 10-11.)

The Harpo litigation provides another source of evidence regarding the meaning of the determining step for claim 1. In that case, in plaintiff's Memorandum in Opposition to Harpo's Motion for Summary Judgment, plaintiff describes the '252 invention as allowing a "potential purchaser" to "read a portion, but not all of the book." (Pl.'s Mem. in Opp'n to Harpo's Mot. For Summ. J. of the Non-Infringement at 2 Illinois

<u>Computer Research, LLC v. Harpo Productions Inc.</u>, No. 08 Civ. 7322 (N.D. Ill. Dec. 16, 2009).)

Accordingly, the determining step of claim 1 should be construed as setting forth an invention which limits the number of pages that can be viewed to something that is less than the entire book. Nothing within the language of claim 1, the specification, the prosecution history or admissions made during the <u>Harpo</u> litigation support an argument that the determining step of claim 1 could relate to the opposite of a limitation — namely, the "lifting" or elimination of a limitation such that entire books could be read or purchased for a fee or over time.

CLAIMS 7 AND 11: ARE THEY INDEFINITE?

The parties dispute whether any portion of claims 7 or 11 need to be construed. Claim 7 is:

A method comprising:

[a] receiving, at a client of a network, information about which of a specified plurality of images to be displayed,

[b] each of specified plurality of images showing textual information and at least a plurality of said images showing non-textual information,

[c] said textual information representative of contents of a book;

[d] displaying said images responsive to said requests;

[e] displaying a screen tip, indicating what the reaction will be to a specified operation.

Claim 11 is:

A method comprising:

[a] receiving, at a client of a network, information about which of a specified plurality of images to be displayed,

[b] each of specified plurality of images showing textual information and at least a plurality of said images showing non-textual information,

[c] said textual information representative of contents of an information media;

[d] displaying said images responsive to said requests; and

[e] displaying keys which enable moving a position of viewing of said information media.

Defendants assert that there are two fundamental problems with claims 7 and 11 that independently render the claims invalid due to the indefiniteness.  (See Defs.' Opening Claim Construction Br. at 18-21.)  They argue that claims 7[a] and 11[a] are not grammatically correct and therefore nonsensical; they separately argue that they fail due to the lack of an antecedent basis for the phrase "said requests" as used in each claim.  (Id.)

Claims of an issued patent are cloaked with a statutory presumption of validity.  See 35 U.S.C. § 282; Datamize, LLC. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005). The '252 patent was subject to extensive communication between the PTO and inventor Harris — including with respect to what is

now claim 7. (Davis Decl., Ex. O at 3 (referring to claims 7
and 11 as "93" and "94").) The Federal Circuit requires clear
and convincing evidence that one skilled in the art simply
cannot discern the boundaries of a patent claim in order to
invalidate it for indefiniteness. Datamize, 417 F.3d at 1348.
This Court cannot invalidate a patent for indefiniteness simply
because construing it is difficult. Halliburton Energy Servs.,
Inc. v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008) ("[C]laims
are not indefinite merely because they present a difficult task
of claims construction. Instead, '[i]f the meaning of the claim
is discernible, even though the task may be formidable and the
conclusion may be one over which reasonable persons will
disagree, we have held the claim sufficiently clear to avoid
invalidity on indefiniteness grounds.'" (citations omitted)).
In order to invalidate a patent for indefiniteness, this Court
would have to find that the language of claim 7[a] is "insolubly
ambiguous" or "not amenable to construction." (Id. at 1250.)

    Claims 7[a] and 11[a] Make Sense

    During oral argument defendants repeatedly stated that in
order to construe claims 7[a] and 11[a], this Court would have
to add and subtract words and perhaps have to describe the claim
in language not even in the claim itself. (See e.g., Hr'g Tr.
at 82.) This alone, however, is not a reason to invalidate a
claim as indefinite. As this Court said then and repeats now,

the very act of using intrinsic evidence (other than the language of the claim itself) and extrinsic evidence is to find ways to describe what words of a claim, which is not clear on its face, actually mean.  See e.g., Financeware, Inc. v. UBS Fin. Servs., No. 11 Civ. 5503 (JFK), 2011 WL 6092311, at *3 (Dec. 7, 2011 S.D.N.Y.) ("In a claim construction hearing, or Markman Hearing, the court interprets the meaning of the patent at issue through examining evidence on the appropriate meaning of relevant key words used in the patent claim.")  Every time parties and the court use words other than what are in a claim itself to construe the meaning and scope of a claim, they are adding words — perhaps adding description, delineating metes and bounds with words not present in the claim itself but that were intended to be part of the claimed invention.  See e.g., Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998) (affirming district court's construction of "degradable" to mean "dissolution/degradation of [an] envelope").  It is not the case that during claim construction, simply using additional words, or taking out words, is overstepping judicial bounds.  See Multiform Desiccants, 133 F.3d at 1477; Laitram Corp. v. Morehouse Indus., Inc., 143 F.3d 1456 (Fed. Cir. 1998) (affirming district court's construction of "driving surface" to mean "flat driving surface").

22

Defendants rightly cite <u>Novo Industries, L.P. v. Micro Molds Corp.</u>, 350 F.3d 1348 (Fed. Cir. 2003), as standing for the proposition that a court may not "correct" the language of a patent in order to give a claim meaning — if the parties needed the language of a patent to be corrected, they must seek a certificate of correction from the PTO.  (Defs.' Opening Claim Construction Br. at 11, 18-20.)  However, <u>Novo</u> should not be stretched too far.  It does not stand for a general proposition that a court may not use additional words to describe the scope and meaning of a claim.  That is a routine exercise in claim construction.  <u>See</u> <u>e.g.</u>, <u>Multiform Desiccants</u>, 133 F.3d at 1477. <u>Novo</u>, then, stands for the important proposition that if a grammatical construction is all that is required to render a claim clear on its face, the court may not delete or reorder words to achieve such clarity.  But that is certainly not to say that a court cannot describe the meaning of a claim using words additional to those contained in the claim itself.  This is what claim construction is all about and is neither earth shattering nor novel.

Plaintiff argues that claims 7[a] and 11[a] are clear on their face and do not need to be construed.  Plaintiff is not asking, as the parties did in <u>Novo</u>, that words be added or subtracted.  <u>See</u> <u>Novo</u>, 350 F.3d at 1354.  Instead, plaintiff urged at oral argument that if the reader pauses in certain

places as the claims are read, then the meaning of the claims
are elucidated.  In this regard, plaintiff states that claims 7
and 11[a] are clear on their face when read as follows:
"information about/ which of/ a specified plurality of images/
to be displayed."  (Hr'g Tr. at 80.)

It is the defendants who offer the additions and
subtractions of words.  (See e.g. Ct. Ex. 1 at 56.)

This Court is mindful that even if construing a claim is
hard, if it is not insoluble, the Court must perform its
assigned task.  See O2 Micro Intern. Ltd. V. Beyond Innovation
Tech. Co., Ltd., 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the
parties present a fundamental dispute regarding the scope of a
claim term, it is the court's duty to resolve it.")  This Court
concludes that when the language of claims 7 and 11[a] are read
with the appropriate pauses, it is clear that no construction is
needed.  In both instances, the language means what it says:
that in both claims, it is anticipated that there will be
received at a client of a network, information, about which of,
a specified plurality of images, to be displayed.  The '252
invention is concerned with providing some but not all images of
a book; which images are to be displayed is subject to
limitation.  Thus, it is an important method of the invention
that the client of a network does in fact receive the
information about which images to display.  Conceivably the

addition of the word "are" prior to the phrase "to be displayed" would tighten the language further. But the absence of the word "are" does not render the entire claim sufficiently indefinite that it loses the heavy presumption of validity that attaches by virtue of the statute.

### Lack of Antecedent Basis

Defendants separately argue that claims 7 and 11 are invalid for indefiniteness because they both lack an antecedent basis with respect to the phrase "said requests." (Defs.' Opening Claim Construction Br. at 19-21.) There is no debate between the parties as to the literal meaning of the words "said" or "requests." The parties implicitly assume that "said" refers to something previously specified and that a "request" is precisely that, a request. The debate centers on the question of whether the claims provide a sufficient basis for determining what the requests are and who made them, that constitute the referred to "said requests." (See e.g. Ct. Exs. 1 at 59 and 2 at 60.)

Defendants are correct that the law presumes that the use of the word "said" in a claim is referring to an earlier use of that term within the patent. Papyrus Tech. Corp. v. New York Stock Exch., 581 F. Supp. 2d 502, 534 (S.D.N.Y. 2008) (use of the word "said" to introduce an element makes that element 'unequivocally referable to its earlier recitation.'").

Defendants argue that there are no preliminary requests to which the later usage of "said requests" in claims 7 and 11 could refer.   In fact, no one, including defendants, has any confusion at all regarding the requests to which claims 7 and 11 are referring.   The entire invention is concerned with sending images for purposes of previewing a product prior to purchase.   It is crystal clear that the "requests" relate to the requests for portions of a book or information media.   However, that is only part of the inquiry.   It is critical in the context of understanding the metes and bounds of an invention to understand who the actors are within the claims.   If a claim covers one set of actors, then that puts the public on notice of one set of bounds regarding certain activities that could result in an infringement of the invention.   On the other hand, if a set of actors is excluded from the claim, then it might not be possible for them to infringe a particular claim.   Here, the question of who is making the requests is an unanswered and important question.   Because there is no way from the face of the claims themselves to determine who is making the requests, the claims do in fact fail for indefiniteness.

If, for instance, the "said requests" are being made by the end user, then the operator of the server which sends out the information could only be liable for indirect infringement. This has specific implications for what proof would be needed to

demonstrate infringement (for instance, if plaintiff has to prove secondary infringement, they will have to present proof of an underlying act of direct infringement upon which the secondary act of infringement relies, see Alloc, Inc. v. Int'l Trade Comm'n, 342 F.3d 1361, 1374 (Fed. Cir. 2003) ("direct infringement . . . is a prerequisite to indirect infringement.")).  Similarly, if the "said requests" are being made by the operator of the server, then direct conduct could result in direct infringement.  This, again, has substantive and proof implications.

Accordingly, this Court finds that, while the disputed language in claims 7 and 11 regarding "said requests" are certainly referring to portions of a good to be previewed prior to purchase, not knowing who is making the requests leaves the public in the untenable position of not knowing how its conduct might or might not run afoul of the claimed invention.  It is possible that one could interpret the phrase "said requests" to capture all requests of whatsoever nature — those made by the end user and those made by the operator of the system.  But the implications for such a broad reading lead down two different infringement paths.  Such an outcome violates the fundamental principle that the claims of the patent are intended to put the world on notice of the exclusionary rights of the patent holder.

See Pitney Bowes, 182 F.3d at 1311.  The public is entitled to a level of certainty that neither claim 7 nor 11 has.

Defendants also assert that if claim 11 does not fail for indefiniteness, 11[e] requires additional construction.  The dispute between the parties with regard to this portion of claim 11 concerns whether, as defendants contend, the language "moving a position of said information media" incorporates the ability to view the information from different angles.  (See Revised Joint Claim Construction Chart at 4; Defs.' Opening Claim Construction Br. at 21.)  Plaintiff asserts that no construction is necessary.  In its brief, plaintiff argues that defendants' reading imports unnecessary limitations.  (Pl.'s Responsive Claim Construction Br. at 17-18.)  Plaintiff agrees that viewing the product from different angles is one way to enable viewing.  (Id. at 17.)  But plaintiff points to parts of the specification that suggest that movement to show different angles is not the only way to view a product as set forth in Claim 11 — that viewing the product from the top or bottom is captured as well.  (Id. at 17.)  This Court agrees that the specification supports a construction of claim 11 that would not limit viewing to merely "angles."

CLAIM 8

Claim 8 is a dependent claim.  It can only survive if claim 7 survives.  For the reasons set forth above, claim 8 fails for indefiniteness.

Nevertheless, the parties dispute the scope and meaning of claim 8.  The core of the dispute is whether the outside cover of a book needs to be displayed prior to a user taking an action that displays content from the inside of the book.  (Hr'g Tr. at 91-97.)  Plaintiff argues that the phrase "commanding an opening of the book" incorporates the concept of a user seeing the outside cover of a book and then taking an action to open the book to display internal content.  (Id.)  The defendants argue that the claim is in fact only concerned with a user taking some action to display interior contents of a book.  (Id. at 94.) This Court finds that the language of claim 8 itself is clear on its face:  the phrase "opening of the book" clearly contemplates a book in a closed position.  Books in closed position rest on either their front or back covers.  When one picks up a book to "open" it, one opens the cover to display internal contents. This meaning and scope of claim 8 is consistent with the invention as described repeatedly in the specification as allowing a user to have the virtual experience of picking up and handling a book.  See U.S. Patent No. 7,111,252 col.2 l.7-8, 17-24.

CLAIM 18

The final claim requiring construction is claim 18.  Claim 18 states:

An apparatus comprising:

[a] a computer,

[b] [the computer] providing limited pages of books that can be viewed over a publically available network, and

[c] [the computer] including a connection to the network, and

[d] [the computer] receives information indicative of at least one desired page of a book over the connection to the network; and

[e] [the computer] returns information indicative of only limited images of pages of the book based on said information; and

[f] wherein said computer limits a number of pages that can be displayed.

The Revised Joint Claim Construction Chart indicates that the disputes concern [b], [e] and [f].  The issues here are similar in nature to those raised with regard to Claim 1[d].  In both instances, there was a disagreement between the parties regarding whether the '252 invention encompassed only portions or pages of a book, or could be read to more broadly capture an entire book.  (Compare Defs.' Opening Claim Construction Br. at 17 with Pl.'s Responsive Claim Construction Br. at 11, 19.)

Following the Markman hearing, the parties submitted
additional materials regarding claims 1 and 18, with plaintiff
arguing that these claims are distinct and independent from each
other and defendants arguing that the patentability of these two
claims are linked.  Those materials make it clear that during
the prosecution history what is now claim 1 and claim 18 were
tied together — and considered to have similar scope.  (See
Defs.' Ltr at 2-3, Jan. 11, 2012 (Dkt No. 107).)  For instance,
to obtain the issuance of claim 18 over the prior art, inventor
Harris told the PTO that that language added to claim 18
rendered the claim "as amended" allowable for the same reasons
as claim 1.  (See id. (citing Davis Decl. Ex. O at 15.))

This Court recognizes the distinctions between claim 1 and
claim 18 pointed to by plaintiff — i.e., the absence of the term
"threshold" in claim 18 and the fact that "threshold" in claim 1
refers to the phrase "amount of reading" instead of "number of
pages" (Pl.'s Ltr at 4, Jan. 11, 2012 (Dkt No. 108) — but they
do not change the analysis.  The prosecution history and
specifications make clear that "amount of reading" and "number
of pages" both refer to book excerpts.  Furthermore, courts
routinely construe similar language in distinct claims
consistently. See e.g., Lucent Techs., Inc. v. Newbridge
Networks Corp., 168 F. Supp. 2d 181, 200 (D. Del. 2001);
Computer Stores Nw., Inc. v. Dunwell Tech, Inc., No. 10 Civ. 284

(HZ), 2011 WL 2160931, at *17 (D. Or. May 31, 2011); <u>Mirror
Imaging, L.L.C. v. Affiliated Computer Servs., Inc.</u>, No. 02 Civ.
73629 (DT), 2004 WL 5644804, at *2 (Feb. 26, 2004, E.D. Mich).

Thus, for the same reasons as this Court set forth with
regard to claim 1[d] it finds that the '252 invention was
intended to cover portions or pages of a book that constituted
less than an entire book.

CONCLUSION

Having construed the claims of the '252 patent, this matter
will now proceed to resolution on the merits regarding
infringement, non-infringement and invalidity.  As this Court
stated at the conference held on November 23, 2011: expert
discovery is to be completed no later than April 4, 2012; the
parties shall submit any dispositive pretrial motions no later
than April 16, 2012; responses shall be filed no later than May
7, 2012; reply briefs, if any, shall be submitted no later than
May 21, 2012.


Dated:     New York, New York
           January 18, 2012

                              _____
                                 KATHERINE B. FORREST
                              United States District Judge